# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA W. JOHNSON,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No.    CIV-09-1126-M |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423, and his application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3) of the Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings**.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on August 15, 2005 alleging a disability since June 20, 2005 (TR. 104, 110, 121). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 65-68). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on January 8, 2008 (TR. 21-64). The Plaintiff appeared in person and with his attorney and offered his testimony in support of the applications (TR. 30-55). A vocational expert (VE) testified at the request of the ALJ (TR. 56-62). The ALJ issued her decision on August 22, 2008 finding that Plaintiff was not entitled to DIB or SSI (TR. 13-20).

The Appeals Council denied the Plaintiff's request for review on April 20, 2009, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 3-5).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date so the process continued (TR. 19). At step two, the ALJ concluded that Plaintiff's status post bilateral slipped capital femoral epiphysis repair and osteoarthritis were severe impairments (TR. 14, 20). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16, 20). At step four, the ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform his past relevant work (PRW) (TR. 18, 20).

2

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform light work, provided that Plaintiff could never squat, crouch, crawl, or operate foot pedals more than infrequently (TR. 18-19). The ALJ used the medical-vocational rules as a framework for decision making and considered the testimony of the VE and determined there were other jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 19-20). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 20).

On appeal to this Court, Plaintiff alleges that: (I) The ALJ erred in failing to properly evaluate the opinions of Plaintiff's consultative examining physician, John A. Saidi, M.D; (II) the ALJ erred in her credibility analysis; and (III) the ALJ erred by failing to conduct a proper step three analysis.

MEDICAL EVIDENCE

In December 2005, Plaintiff underwent a consultative physical examination performed by Robin Hall, M.D., who reported that Plaintiff was "alert and oriented x3 and in no acute distress"; that he moved "onto and off of the exam table with a little stiffness", but his movements were otherwise fluid; and that his speech, hearing and thought processes appeared normal (TR. 182). Dr. Hall further reported that Plaintiff's lungs were "clear to auscultation bilaterally without rales, rhonchi or wheezes; that his heel and toe walking were both weak bilaterally; and that although he ambulated with a limp, his gait was steady and safe at a slow speed without the use of any assistive device (TR. 182). Dr. Hall's assessment of Plaintiff was that he had congenital hip disease with reconstructive surgery and chronic hip pain (TR. 182).

3

In January 2006, a physical RFC assessment was completed by agency physicians in which they concluded that Plaintiff was able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for about six hours in an eight hour workday; and sit (with normal breaks) for about six hours in an eight hour workday (TR. 189). Agency physicians found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching or crawling (TR. 190). Agency physicians further concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 188-195, 211).

In April 2008, Plaintiff underwent a consultative physical examination performed by John A. Saidi, M.D., who found that Plaintiff was alert, "oriented x3" and not in acute distress; and that motor function was "present bilaterally and symmetrically" (TR. 271). Dr. Saidi also reported that Plaintiff was able to "walk without an artificial device"; that his gait was "normal, safe and stable"; and that he could not do toe or heel walking due to the pain in his hips (TR. 271). Dr. Saidi found that Plaintiff had decreased range of motion in his dorsolumbar back with pain and stiffness; that range of motion was decreased significantly in both hips with pain in both hips; and that flexion and extension in his knees was decreased "associated with pain in his hips, no pain in his knees" (TR. 271).

Also in April 2008, Dr. Saidi completed a medical source statement form in which he concluded that Plaintiff could occasionally lift or carry up to 20 pounds; that he could sit or stand for only 5 minutes at a time; and that he could only walk for 3 minutes at one time without interruption (TR. 277). Dr. Saidi also concluded that Plaintiff could sit for only 4 hours, stand for 2 hours and walk for 30 minutes in an eight hour work-day; and that Plaintiff must lie down for 2.5 hours each work-day (TR. 277). Dr. Saidi also concluded that Plaintiff could never climb ladders or scaffolds; and that he could only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, or crawl (TR. 279). In support of these conclusions Dr. Saidi stated that Plaintiff's range of motion in his

4

lumbar spine and hips was decreased because of pain; and that range of motion in his knees was mildly decreased because of pain in his hips (TR. 277). Dr. Saidi found that Plaintiff could not engage in the following activities: Go shopping, walk a block at a reasonable pace on rough or uneven surfaces, or use "standard public transportation" (TR. 281). Dr. Saidi's opinions were as to Plaintiff's "current limitations only" and he expressed no opinion as to whether the limitations have lasted or would last for 12 consecutive months (TR. 281).

At the hearing, Plaintiff testified that he could not work because of severe pain in his hips, knees, and back; that he could not "stand or walk very far at all"; and that the pain is "there all the time" (TR. 35). He also testified that medication fail to alleviate the pain "at all" (TR. 35).

## I.

Plaintiff argues that the ALJ erred in failing to properly evaluate the opinions of Plaintiff's consultative examining physician, Dr. Saidi (See Plaintiff's Brief at pages 14-20). Specifically, Plaintiff contends that the ALJ erred in his rejection of Dr. Saidi's conclusions from an April 2008, medical source statement (TR. 276-281). In her decision the ALJ recited the opinions of Dr. Saidi both from his narrative report and from the medical source statement dated the same day (TR. 15-16). In discounting the opinions of Dr. Saidi expressed on the medical source statement the ALJ reasoned that

> There was no basis provided to support the estimation regarding environmental limitations. Finally the examiner thought the claimant could not go shopping, walk a block at a reasonable pace on rough or uneven surfaces or use standard public transportation. Many of these restrictions were not supported by the examiner's narrative. He provided limitations on walking yet he wrote that the claimant was able to walk without an artificial device. His gait was normal, safe and stable. His restrictions also were contradictory because he noted the claimant's hip pain yet provided no limits on the operation of foot pedals also he did not limit the claimant more than to an occasional level on the ability to stoop, crouch or crawl.

(TR. 16). "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) *Knight v. Chater,* 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. §404.1527(c)).

In her decision the ALJ adequately discusses some of the restrictions from Dr. Saidi's medical source statement and provides an explanation for her rejection of those restrictions. However, the ALJ's decision is silent as to Dr. Saidi's opinion that Plaintiff could sit or stand for only 5 minutes at a time; that Plaintiff could sit for only 4 hours, stand for 2 hours and walk for 30 minutes in an eight hour work-day; and that Plaintiff must lie down for 2.5 hours each work-day (TR. 277). The ALJ erred in failing to specifically explain why she rejected these opinions. An ALJ is not required to discuss every piece of evidence, but "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Plaintiff also argues that the ALJ erred in failing to recontact Dr. Saidi to clarify his opinions (See Plaintiff's Brief at pages 18-19). The medical opinions in the narrative report of Dr. Saidi are remarkably inconsistent with the medical opinions expressed in the contemporaneous medical source statement (TR. 270-281). The Commissioner, under the governing regulations, must recontact a treating physician when the information the doctor provides is "inadequate ... to determine whether you [the claimant] are disabled." 20 C.F.R. 404.1512(e). The medical record from Dr. Saidi is inadequate because his medical evidence contains a "conflict or ambiguity that must be resolved" 20 C.F.R. 404.1512(e)(1).

On remand, the ALJ should recontact Dr. Saidi and obtain either a new report or a more detailed report which resolves the inconsistencies in the earlier medical evidence. If the ALJ chooses to discount or reject the new or more detailed report then she must explain her reasoning as to each opinion she rejects.

# II.

Plaintiff also argues on appeal that the ALJ erred in his assessment of Plaintiff's credibility (See Plaintiff's Brief at pages 20-24). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* At 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain. "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain." *Id.* Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164. In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning

7

which supports the decision as opposed to mere conclusions. *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls* at 1372. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Id* at 1372.

In the present case the ALJ reached step three of the *Luna* analysis and in assessing the credibility of the Plaintiff followed the dictates of *Kepler* by providing an adequate discussion of the evidence which linked specific evidence to his findings (TR. 17-18).

In accordance with *Luna* and *Kepler,* the ALJ determined that the medical evidence did not support the degree of limitation claimed by Plaintiff. The absence of an objective medical basis for the degree of severity of pain may affect the weight given to subjective allegations of pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993); *See Luna*, at 165 (10th Cir. 1987). Further, Although Plaintiff complained of pain, none of Plaintiff's doctors provided explicit confirmation of the existence of disabling pain and this absence of confirmation detracted from Plaintiff's credibility. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Huston v. Bowen*, 838 F.2d 1131, 1129 (10th Cir. 1988).

An ALJ's determination of credibility is given great deference by the reviewing court. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992). On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ. *Kepler* at 391; (Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence); *Musgrave*, 966 F.2d 1371, 1374.

Thus, it appears from the record that the ALJ's credibility determination was supported by substantial evidence and should not be disturbed on appeal.

# III.

Plaintiff argues on appeal that the ALJ erred at step three by not finding Plaintiff disabled under Listing 1.02[1] (Major dysfunction of a joint(s)(due to any cause)) (See Plaintiff's Brief at pages 24-28). At step three of the sequential evaluation process, a claimant's impairment is compared to the Listings (20 C.F.R. Pt. 404, Subpt. P, App. 1). If the impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. A plaintiff has the burden of proving that a Listing has been equaled or met. *Bowen v. Yuckert*, 482 U.S. at 140-42 (1987); *Williams v. Bowen*, 844 F.2d at 750-51 (10th Cir. 1988). To be found disabled based on the Appendix 1 Listing of Impairments, Plaintiff must show that his condition satisfies all of the specified medical criteria of a particular Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (impairment does not meet Listing if it has only some of the medical criteria, no matter how severe). In her decision, the ALJ is "required to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007 (10th

---

[1] ***Major dysfunction of a joint(s) (due to ay cause):*** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:  A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

1.00B2b What we mean by inability to ambulate effectively. (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Cir. 1996). The decision as to whether a Plaintiff has met a listing is a factual determination. *Hogg v. Sullivan*, 987 F.2d 328, 334 (6th Cir. 1993); *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir. 1995) (detailed listing analysis).

The ALJ's decision error in evaluating the opinions of Dr. Saidi and her error in failing to recontact Dr. Saidi for a clarification of his medical opinions has tainted the ALJ's step three analysis. Thus, Plaintiff's assertion of error at step three will not be considered.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED for further administrative proceedings**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED on October 25, 2010.



SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE